WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard P. Sarkovitz,<br><br>               Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>               Defendant. | No. CV-12-00676-TUC-BPV<br><br>**ORDER** |

Plaintiff, Richard P. Sarkovitz, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties.

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 29, 2008 alleging an onset of disability beginning August 9, 2006 due to back pain, high blood pressure, tailbone, shoulder and neck pain, and spine and lower back problems. Transcript/Administrative Record ("Tr.") 154-157, 190. The application was denied initially and on reconsideration. Tr. 86-89, 91-93. A hearing before an Administrative Law Judge ("ALJ") was held on October 28, 2009. Tr. 46-69. The ALJ issued a decision

on April 1, 2010, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 31-42. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 6-8.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1) After considering the record before the Court and the parties' briefing of the issues, the Court affirms Defendant's decision.

## II.   THE RECORD ON APPEAL

### A.   Plaintiff's Background and Statements in the Record

Plaintiff was sixty (60) years old at the time of the ALJ's decision with a high school degree and past relevant work as a streetcar driver and as a long-haul driver. Tr. 51, 54, 173, 177-180, 196.

Plaintiff testified at his hearing before the ALJ on October 28, 2009, that he left his job as a streetcar driver because "I couldn't stay on my feet for 12 hours a day." Tr. 54. He states he is unable to work because of his heart condition and arthritis. Tr. 54. His rheumatologist informed him that the only thing he could do to control the pain caused by the condition was to take medications, and "meds just screwed up my system. I couldn't take them." Tr. 55. The arthritis affects his tailbone and "pretty much eliminates sitting." Tr. 57. Plaintiff also testified that he had heart surgery a couple of weeks before the hearing. Tr. 55. His heart condition caused dizziness, blackout spells and passing out. Tr. 56-57.

Plaintiff stated he could only sit for about an hour, and stand for 45 minutes to an hour, and gets winded and has to sit down when he walks for three blocks. Tr. 57-58. Pain in his shoulder prevents him from lifting even a gallon jug out of the refrigerator. Tr. 58.

Plaintiff testified that he takes Flexeril for pain, Plavix, a blood thinner, for his heart condition, Coreg, enalapril maleate, and Xanax for anxiety. Tr. 59-60. Although prescribed, Plaintiff doesn't take Indorin because it upsets his stomach and causes constipation. Tr. 60.

In a typical day, Plaintiff takes 15 minutes to get out of bed, goes shopping with his mother once a week though "[l]ots of times I'll have to stay in the vehicle because I can't walk around." Tr. 61 On days that he doesn't shop, he lays down in bed or in a recliner instead. Tr. 64-65. After shopping, he takes a nap from lunchtime to 4:00 in the afternoon, then wakes up to have dinner, watches television until 10:00 p.m., then sleeps. Tr. 61. He does some housework, but his mother stops him when she sees that he is in pain. Tr. 61.

A vocational expert ("VE") testified that his past relevant work as a forklift operator was medium exertion work, and very low semiskilled - unskilled; as a long-haul truck driver was medium exertion level and semiskilled; and as a street car operator was light exertion, very low semiskilled - unskilled. The VE testified that if Plaintiff was restricted to medium work with occasional bending and stooping, avoiding repetitive overhead work with the right arm, he could still perform all of his past relevant work. Tr.

67. If Plaintiff were restricted to light work, he would still be able to perform the work of a streetcar operator, but not as a truck driver or forklift operator. Tr. 67. If Plaintiff was unpredictably dizzy with changes in posture and with possible blackouts, he would not be able to perform any of his past relevant work. Tr. 68.

### B. Relevant Medical Evidence Before the ALJ[1]

#### *1) Treating Sources*

Evidence of Plaintiff's mental impairment from treating sources is scarce, and neither party relies on this evidence. As this evidence is relevant to the Court's harmless error analysis, the Court will review the evidence related to Plaintiff's mental impairments from Plaintiff's treating sources. Prior to the evaluations conducted by the consultative examiners, Plaintiff's treating physician during the time period from February to April, 2008, David Brown, M.D., noted that Plaintiff had a positive history of anxiety. Tr. 273. Though no symptoms of mental impairment were discussed and no mental impairment was diagnosed, a "Chronic Problems/Medications" form in Plaintiff's records indicated anxiety as a chronic problem, and Xanax on the list of medications. Tr. 277.

A psychiatric medical evaluation was conducted at "SEABHS" on August 21, 2009, by an examiner who concluded that Petitioner had depressed mood, but normal alertness, motor, and perception; good eye contact, concentration, fund of knowledge,

---

[1] Plaintiff raises no issues regarding the findings of the ALJ in respect to physical or exertional limitations, thus the Court reviews only the evidence related to Plaintiff's claim that the ALJ erroneously assessed his mental impairments.

- 4 -

insight and judgment; was oriented; had intact memory; non-psychotic thought content; and appropriate affect. Tr. 367-68. Treatment with Lexapro was initiated. Tr. 369.

Plaintiff's treating physician Santsaran C. Patel, M.D, continued Plaintiff on Lexapro. Tr. 509. On July 17, 2009 Dr. Patel reported that Plaintiff's symptoms were "well controlled" on Lexapro and Xanax. Tr. 355. Dr. Patel continued to observe that Plaintiff's symptoms were controlled on Xanax in December, 2009. Tr. 424.

*2) Examining State Agency Medical Source*

On July 3, 2008, Plaintiff was referred to Machelle Martinez, Ph.D., a licensed psychologist, to assist in the determination of disability. Tr. 297-298. Plaintiff reported symptoms to Dr. Martinez of worry, some diminished interests, no pleasure, suicidal ideation, and feeling useless. Plaintiff did not have "difficulty thinking or making decisions. . . [and] usually completes tasks." His concentration is "good when working on the computer and in conversations of interest but wanders when disinterested and when watching TV." Tr. 297.

Martinez examined Plaintiff, observing that his thoughts "were clear, logical and goal oriented" and he performed well on simple recall tests. Tr. 298. Dr. Martinez diagnosed Plaintiff with depressive disorder and anxiety order, concluding that "[a]ttention and concentration were adequate and memory grossly intact. He presented with euthymic mood although mild symptoms of depression and anxiety were reported." Tr. 298.

Dr. Martinez completed a Psychological/Psychiatric Medical Source Statement, assessing Plaintiff's limitations caused by mental impairment. Tr. 300. Dr. Martinez noted that Plaintiff would have slight limitations with detailed instructions and slight difficulty adjusting to changes in work setting, but otherwise was able to remember locations and work procedures, understand and remember simple instructions, complete simple tasks, make simple decisions, work with the public, and work without specialized supervision within time frames and maintain regular attendance. Tr. 300.

### 3) *Non-examining State Agency Physicians*

Jaine Foster-Valdez, medical consultant, reviewed the evidence and completed a Psychiatric Review Technique. Tr. 310-323. Dr. Foster-Valdez reviewed the evidence and noted that Plaintiff's depression and anxiety were not "severe" impairments (Tr. 310). She explained that Dr. Martinez's observations and opinions were relatively benign, indicating only mild symptoms (Tr. 322). A second psychologist, Eugene Campbell, Ph.D., reviewed the evidence and agreed with Dr. Foster-Valdez's assessment.

### 4) *The ALJ's Findings*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 9, 2006 through the date last insured, September 30, 2008. Tr. 37, ¶ 2. The ALJ found that Plaintiff has multiple severe impairments: ankylosing spondylitis, arthritis, and hepatitis C. Tr. 37, ¶ 3. The ALJ found that Plaintiff had a medically determinable impairment of depression and anxiety, but, giving great weight to the consultative and examining physicians, found that the impairment would

not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and was therefore nonsevere. Tr. 37. Specifically, relying on Dr. Martinez's report and addressing the four functional areas in the psychiatric review technique, the ALJ found mild limitations in activities of daily living, social functioning, and concentration, persistence and pace, and no episodes of decompensation. Tr. 38. The ALJ found that these impairments do not meet or equal a listed impairment. Tr. 38, ¶ 4. The ALJ stated that the limitations alone were not a RFC assessment, because the mental RFC requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments ("paragraph B criteria"). Tr. 38 (citing SSR 96-8p). The ALJ stated that the RFC determination reflected the degree of limitation the undersigned found in the "paragraph B" mental function analysis. Tr. 38. The ALJ found that Plaintiff had the RFC to perform light work, with limitations to occasional bending and stooping and avoid repetitive overhead reaching with his right arm. Tr. 38, ¶ 5. The RFC did not include any limitations caused by Plaintiff's depression and anxiety. The ALJ found that Plaintiff was capable of performing his past relevant work as a street car operator as actually and generally performed, and thus, the ALJ concluded that Plaintiff is not disabled. Tr. 40, ¶¶ 6-7.

*5) Additional Evidence Submitted to the Appeals Council*

After the ALJ's April 1, 2010 decision, Plaintiff submitted additional evidence in the form of medical records and a representative's brief to the Appeals Council. Tr. 377-

515. The Appeals Council found that the additional evidence did not provide a basis for changing the ALJ's decision. Tr. 7.

## III. DISCUSSION

### A. Argument

Plaintiff raises one point of error. Plaintiff contends that the ALJ erred by failing to include the mental limitations that she found Plaintiff suffered from in the assessment of Plaintiff's RFC and in the hypothetical to the VE. (Doc. 19). The Commissioner contends that Plaintiff failed to show that the ALJ overlooked any concrete, work-related limitation caused by his mental impairments, and, even if there was error, such error was harmless. (Doc. 21).

### B. Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*. (quoting *Robbins v. Soc.Sec.Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) he has not worked since the alleged disability onset date, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity (RFC) precludes him from performing his past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520(a)-(g).

C. Analysis

A special psychiatric review technique ("PRT") is used to evaluate the presence and severity of mental impairment. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a); SSR 96-8p, 1996 WL 374184, at *4; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, ("the Listing of Impairments"), § 12.00 *et seq*;. Under the PRT, if the claimant presents a colorable claim of mental impairment, the ALJ must determine whether the claimant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, and determine the severity of the mental impairment. *Keyser*, 648 F.3d at 725. The ALJ clearly met this requirement by rating and assessing Plaintiff's limitations in each of these four functional areas and finding that Plaintiff's "mild limitations" in three of four categories did not result in a severe mental impairment.

Finally, regardless of severity, the ALJ is required to consider all of a claimant's medically determinable impairments when making an RFC determination. *See* C.F.R. § 404.1545(a)(2). Plaintiff asserts that, with respect to mental impairments, an ALJ must

take the degree of functional loss imposed by the severe impairment as described in the four broad categories outlines in 20 C.F.R. § 404.1520a and provide a "more detailed assessment by itemizing various functions" as summarized at steps two and three. (Doc. 19, at 6) Plaintiff argues that ALJ failed to perform this mandated analysis. (*Id*. at 4-5) The ALJ's RFC assessment was not erroneous. Dr. Martinez's assessment of Plaintiff's depression and anxiety supports the conclusion that these conditions did not impose any limitations on the RFC. Plaintiff's depression and anxiety were not sufficiently severe such that it would significantly affect his ability to work beyond the exertional limitations. As correctly noted by the ALJ, the mild limitations identified in the paragraph B criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. The RFC, which is assessed before going from step three to step four, requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the Listing of Impairments. *See* 20 C.F.R. §404.1520(a)(4); SSR 96-8p, 1996 WL 374184, at *4. The ALJ conducted this assessment when he performed the PRT at step two. Rating the degree of functional limitation is based on the extent to which the claimant's impairment(s) interferes with his ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 404.1520a(c)(2). In the category of activities of daily living the ALJ found Plaintiff prepared most meals, vacuumed his room, can drive short distances, bathes and dresses regularly with some difficulty raising his arms, manages his own finances, walks his dog, and spends time on

the computer reading the news. Tr. 38. In the category of social functioning the ALJ found Plaintiff had good eye contact, was friendly, and cooperative. *Id*. In the area of concentration, persistence or pace, the ALJ found that Plaintiff had adequate concentration and was able to complete simple tasks during Dr. Martinez's examination. *Id*. The ALJ found no episodes of decompensation. This detailed assessment did not include any significant nonexertional limitations that the ALJ failed to incorporate into the RFC.

Plaintiff further argues that failure to set forth mental limitations in the hypothetical propounded to the VE is reversible error. (Doc. 19, at 7.) The burden is on Plaintiff to demonstrate not only the error, but also that it affected his "substantial rights." *See Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012)(citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *see Molina v. Astrue*, 674 F.3d 1104, 1118 (9th Cir. 2012). In deciding whether error was harmless, this Court applies "the same kind of harmless-error rule that courts ordinarily apply in civil cases, […] [i]n other words, courts must review cases without regard to errors that do not affect the parties' substantial rights." *Molina,* 674 F.3d at 1118 (internal citations and quotations omitted); *see also* 28 U.S.C. §2111(codifying the federal harmless error rule for civil cases)). Plaintiff submits that, during the hearing, the VE confirmed that even a five to ten second lapse of attention would preclude the ability to perform the functions of a streetcar operator. (Doc. 19, at 8)(citing Tr. 68.) The hypothetical given to the VE suggested that these lapses of attention would be due to unpredictable dizziness, with possible blackouts. Plaintiff

argues that, under this hypothetical, his mild mental limitations in social functioning and concentration, persistence, or pace, result in the inability to operate a streetcar and attend to passengers. (Doc. 19, at 7.) There is no evidence in the record, however, that supports a finding that Plaintiff's mental limitations would result in any lapse of attention as significant as that proposed by the hypothetical, or any concrete limitation that might conflict with the duties of his past relevant work as a streetcar driver. Thus, even if the ALJ failed to consider Plaintiff's mental limitation in determining the RFC and propounding questions to the VE, because such error would be "inconsequential to the ultimate nondisability determination," it is harmless and does not warrant vacating the ALJ's decision. *See Molina,* 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Accordingly,

IT IS ORDERED:

1. The Commissioner's decision denying benefits is AFFIRMED.

2. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

Dated this 31st day of January, 2014.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 12 -